IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| JASON WITTENAUER | § | |
| | § | |
| Plaintiff | § | |
| | § | |
| v. | § | CIVIL ACTION |
| | § | |
| RACETRAC, INC. d/b/a RACETRAC | § | NO. _____ |
| PETROLEUM STORE 240 | § | |
| | § | |
| Defendant. | § | |

## DEFENDANT'S NOTICE OF REMOVAL

TO THE HONORABLE UNITED STATES DISTRICT COURT:

RaceTrac, Inc. d/b/a RaceTrac Petroleum Store 240 ("RaceTrac"), the Defendant herein, respectfully submits the following notice of removal.

### I.

1.     RaceTrac is the Defendant in litigation now pending in the 67th Judicial District Court of Tarrant County, Texas, Cause No. 067-339331-23, styled "*Jason Wittenauer v. RaceTrac, Inc. d/b/a RaceTrac Petroleum Store 240.*"  The suit filed against RaceTrac is a civil action seeking damages for alleged personal injuries arising from an alleged trip-and-fall incident on premises owned and operated by Defendant in Fort Worth, Tarrant County, Texas.

### II.

2.     Both at the time of the filing of Plaintiff's Original Petition and at the time of the filing of this Notice of Removal, Plaintiff was, is, and continuously has been an individual citizen of the State of Texas with his place of residence in the State of Texas.  Both at the time of filing Plaintiff's Original Petition and at the time of the filing of this Notice of Removal, Defendant RaceTrac was, is, and continuously has been a corporation organized and existing under the laws

of the State of Georgia and having its principal place of business in the State of Georgia. Thus, Defendant is a corporate citizen of the state of Georgia.

3.      There is, therefore, complete diversity of citizenship between the parties.

## III.

4.      The amount in controversy in this matter, exclusive of interest and costs, exceeds the sum of $75,000.

5.      While Plaintiff's Petition did not comply with Rule 47(c) of the Texas Rules of Civil Procedure, which requires a plaintiff to state in his petition a specific range of damages sought, Plaintiff did allege in numbered paragraph III of his Petition that, "Plaintiff seeks monetary relief not over $74,500.00." Plaintiff did not, however, file a stipulation or binding affidavit with the petition.

6.      Defendant would show that Plaintiff's allegation is not only meaningless in analyzing the actual amount in controversy, but in this instance the allegation was fraudulent and made in bad faith, presumably for the purpose of trying to prevent Defendant from exercising its right to remove this case to federal court. That such allegation was fraudulent and made in bad faith is readily demonstrated by the fact that on January 6, 2023, ***only three days after*** filing Plaintiff's Original Petition, Plaintiff's counsel submitted a demand to RaceTrac, by letter submitted to Broadspire, the third-party administrator for RaceTrac, for the sum of $1,062,359.74, based on claimed past medical specials of $62,359.74. A copy of the demand letter is attached hereto as Exhibit A (but with the attached medical records and bills omitted).[1]

7.      The receipt of the settlement demand is clearly inconsistent with the Plaintiff's bad faith allegation that, "Plaintiff seeks monetary relief not over $74,500.00."

---

[1]      While the demand letter made an alternate demand of "Policy Limits," RaceTrac is self-insured to the sum of $500,000. Therefore, the demand for "Policy Limits" is not only meaningless in this context, but in any event it clearly does not represent a sum less than $75,000.

8.     Texas federal courts have determined that specific damage allegations such as the one in this case, namely, "Plaintiff seeks monetary relief not over $74,500.00," not only fail to comply with Texas pleading requirements, but actually smack of bad faith.

> Texas law simply does not permit a plaintiff to plead that he or she seeks damages not to exceed $75,000. Thus, a specific demand such as Plaintiff's cannot be deemed the amount in controversy because "[s]uch manipulation is surely characterized as <u>bad faith</u>." *Garcia v. Kellogg USA, Inc.*, No. 7:13-CV-00347, 2013 WL 4735169, at *1 (S.D. Tex. Sept. 3, 2013) (citing De Aguilar, 47 F.3d at 1410); see also Ford v. United Parcel Serv., Inc. (Ohio), No. 3:14-CV-1872-D, 2014 WL 4105965, at *2 (N.D. Tex. Aug. 21, 2014) (holding that plaintiff who pleaded an award not to exceed $74,000 "purposefully contravened the Texas rules governing pleading requirements so as to avoid federal jurisdiction."). These considerations inform the Court that instead of pleading a legitimate estimation of damages in this case, "[a]s a functional matter, [Plaintiff is] attempting to avoid federal jurisdiction." *De Aguilar*, 47 F.3d at 1410. Thus, Plaintiff's specific sum does not control the Court's analysis.

*Chavez v. State Farm Lloyds,* No. 7:15-CV-487, 2016 WL 641634, at *2 (S.D. Tex. 2016) (emphasis added).

9.     The Fifth Circuit has also noticed this opportunity for manipulation and prescribed the following solution:

> We have nevertheless remained vigilant to the potential for manipulation by the plaintiff who prays for damages below the jurisdictional amount even though he knows that his claim is actually worth more.  This is one reason why we have held that if a state court defendant can show that the amount in controversy actually exceeds the jurisdictional amount, then the state court plaintiff who is seeking to prevent removal must be able to show that, as a matter of law, it is certain that he will not be able to recover more than the damages for which he has prayed in his state court complaint.  *DeAguilar*, 47 F.3d at 1411. It would avail Greenberg nothing to argue that his counterclaim or subsequent state petition would merely clarify ambiguity regarding the amount in controversy, because – **at least in Texas – "litigants who want to prevent removal must file a binding stipulation or affidavit *with* their complaints."**  Id. at 1412 (citation omitted). No such binding stipulation or affidavit was filed by Greenberg.

<u>**DEFENDANT'S NOTICE OF REMOVAL**</u> - **Page 3**

*St. Paul Reinsurance Co., Ltd. v. Greenberg*, 134 F.3d 1250, 1254 n. 18 (quoting *De Aguilar v. Boeing Co.*, 47 F.3d 1404, 1412 (5th Cir. 1995)) (emphasis added).

10.     Hence, when a plaintiff, as here, fails to supply a binding stipulation or affidavit with their complaint, the Court is not bound by Plaintiff's fraudulent allegation and further analysis should be performed to determine whether the case is a proper candidate for removal.  In a diversity case, if a jury could award damages based on the petition that exceed $75,000, as is clearly the case here, and Plaintiff has not tendered a binding stipulation that he will take less than that amount, removal is proper.  In addition, as the Fifth Circuit has noted, "this is not a burden-shifting exercise . . . plaintiff must make all information known at the time he files the complaint." *De Aguilar v. Boeing Co., supra*, 47 F.3d at 1411; *Gebbia v. Wal-Mart Stores, Inc.*, 233 F.3d 880, 883 (5th Cir. 2000).

11.     Plaintiff does not get to hide the facts or mislead the Court and counsel by making fraudulent allegations about the amount in controversy for the purpose of preventing the defendant from exercising his right to remove a case to federal court.  *Martinez v. Liberty Ins. Corp.*, 2019 WL 6894497, *2 (S.D. Tex. 2019) (the court concluded that Martinez's allegation in his Texas state court petition that his claim did not exceed $75,000 (1) contravened Texas Rule of Civil Procedure 47 (requiring plaintiff to state in an original petition the range of monetary relief sought among five pre-defined ranges, the lowest range being monetary relief of $100,000 or less), (2) would not have bound Martinez to recover less than $75,000, and (3) was an improper attempt to circumvent federal diversity jurisdiction, considering that the plaintiff's demand, as here, clearly demonstrated that the amount in controversy exceeded $75,000.  The *Martinez* court further concluded that the allegation of a maximum recovery of $74,000 was not

made in good faith and thus did not control the action's amount in controversy. *Id.*[2] The same result is required here.

12.     As the Fifth Circuit has noted, the "purpose of the removal statute" is "to encourage prompt resort to federal court when the defendant first learns" of the facts supporting removability. *Addo v. Globe Life & Acc. Ins. Co.*, 230 F.3d 759, 762 (5th Cir. 2000). Plaintiff's demand letter clearly constitutes "other paper" under 28 U.S.C. §1446(b)(3).  Indeed, the court in the *Addo* case addressed this issue as follows: "Holding that a ***post-complaint letter***, which is not plainly a sham, may be 'other paper' under §1446(b) is consistent with the purpose of the removal statute …." *Id.* at 762.

13.     The principal issue addressed in *Addo* was whether a demand letter received after suit was filed could constitute receipt of "other paper" under §1446(b) so as to support removal of the case, when the demand letter was the defendant's first notice of a demand in excess of $75,000. While the defendant in *Addo* did not remove the case within 30 days of its receipt of the demand letter, and thus its subsequent removal was deemed to be untimely, the Fifth Circuit Court of Appeals affirmed that a defendant's receipt of a post-complaint demand letter constitutes receipt of "other paper" under §1446(b). *Id.* at 762. In addition, the plaintiff's demand letter was deemed to comply with the Fifth Circuit's rule that "other paper" must result from a voluntary act of the plaintiff which gives the defendant notice of the changed circumstances which now support federal diversity jurisdiction. *Id.*

14.     Plaintiff's settlement demand is proper evidence in determining the amount in controversy. *See, e.g., Stramel v. G.E. Capital Small Bus. Fin. Corp.*, 955 F. Supp. 65, 68 (E.D. Tex. 1997) (settlement demand letter was properly considered in determining whether case was

---

[2]      The District Court also held that Martinez's signed stipulation that he was not seeking an award exceeding $75,000 that was *filed after removal*, when it should have been filed in state court before removal because federal courts determine removal jurisdiction on the basis of the claims as they existed at the time of removal, did not divest

removable); *Carnahan v. Southern Pacific R.R. Transp. Co.*, 914 F. Supp. 1430, 1431-1432 (E.D. Tex. 1995) ("This Court finds that the defendant has proven by a preponderance of the evidence that, as of the date of removal, the amount in controversy likely exceeded $50,000. * * * As economics help us understand, the rational amount for which one is willing to settle is generally less than the maximum jury award that is reasonably plausible at the conclusion of a successful trial. From an economic viewpoint, then, clearly there is greater than $50,000 in controversy."); *Golden v. Dodge-Markham Co., Inc.*, 1 F.Supp.2d 1360, 1364 (M.D. Fl. 1998) (courts examine pre-removal settlement demands on an individual basis to determine if they provide a candid assessment of the amount likely to be recovered at trial); *Jackson v. American Bankers Ins. Co. of Florida*, 976 F. Supp. 1450-1454 (S.D. Al. 1997) (stating in denial of Plaintiff's Motion to Remand, "If plaintiffs are willing to settle the case for the sum of $70,000, then it follows *a fortiori* that plaintiffs would expect to receive considerably more than $70,000 at trial.").

15.    As set forth in Exhibit A, Plaintiff claims that he sustained a "significant injury" to his left hand and finger, including Raynaud's Syndrome without gangrene, sprain of left ring finger, pain in left hand, cellulitis of left finger, crushing injury of left ring finger and pain in left fingers. In addition, Plaintiff claims that his past medical expenses total $62,359.74. Accepting such statements as true, and without admitting that all of Plaintiff's claimed injuries resulted from or were caused by the alleged trip and fall, Defendant submits that it is facially apparent that Plaintiff's claim has an amount in controversy in excess of $75,000, especially considering that Plaintiff's settlement demand in the January 6, 2023 letter (Exhibit A) was not $74,500, as alleged in Plaintiff's Petition, but was instead $1,062,359.74 – **an amount more than 14 times the requisite threshold for diversity removal jurisdiction of $75,000.**

the court of diversity jurisdiction. *Id.* at *2.

**DEFENDANT'S NOTICE OF REMOVAL** - Page 6

16.     Consistent with the settlement demand, Plaintiff alleged in his Petition that his alleged fall in the restroom on Defendant's premises "caused serious injuries to Plaintiff's hand/finger." *Plaintiff's Original Petition*, p. 2, ¶ V.

17.     In addition, Plaintiff alleges on pages 3 and 4 of his Petition:

> As a result of the injuries Plaintiff sustained, JASON WITTENAUER incurred reasonable and necessary doctors' and medical expenses for necessary medical care and attention. There is also a probability JASON WITTENAUER will incur additional reasonable expenses for necessary medical care and attention in an amount unknown at this time.
>
> In addition, JASON WITTENAUER suffered severe physical and mental pain, suffering and anguish and in all reasonable probability, will continue to suffer in this manner well into the future.
>
> As a proximate result of the negligence of DEFENDANT RACETRAC INC D/B/A RACETRAC PETROLEUM STORE 240, Plaintiff, JASON WITTENAUER, suffered injuries that have, temporarily or permanently, diminished Plaintiffs ability to administer to the needs of Plaintiff and Plaintiffs family. In all probability, the ability to attend to customary household duties will continue to be so impaired well into the future.

*Plaintiff's Original Petition*, pp. 3-4, ¶ VII.

18.     Finally, by reason of his Prayer, Plaintiff seeks judgment against Defendant for:

    a.     Actual medical bills . . . and for future medical attention . . .;

    b.     Monetary damages for past physical pain and suffering and mental anguish . . .;

    c.     Monetary damages for future physical pain and suffering and mental anguish . . .;

    d.     Physical and wage impairment . . .;

    e.     Lost wages and loss of future earning capacity;"

*Plaintiff's Original Petition*, p. 5.

19.     Accordingly, given the past medical bills allegedly totaling $62,359.74 and the settlement demand of $1,062,359.74, Defendant submits that the amount in controversy in this matter,

exclusive of interest and costs, unquestionably exceeds the sum or value of the jurisdictional threshold of $75,000, notwithstanding Plaintiff's fraudulent allegation to the contrary.

## IV.

20.     This Court has jurisdiction and this action is properly removable based upon diversity of citizenship under 28 U.S.C. §1332, et seq.  Pursuant to 28 U.S.C. §1664, RaceTrac has removed this action to this Court within the time specified by law.

## V.

21.     Pursuant to Local Rule 81.1, attached hereto are (1) an index of all attached documents, (2) a copy of the Civil Case and Transaction Information in the State Court action, and (3) all pleadings (excluding discovery material) filed in the State Court action, Cause No. 067-339331-23, in the 67th District Court of Tarrant County, Texas.

### **PRAYER FOR RELIEF**

Wherefore, premises considered, RaceTrac prays that the action now pending in the 67th Judicial District Court of Tarrant County, Texas be removed to this, the United States District Court for the Northern District of Texas, Fort Worth Division.

Respectfully submitted,

BY: _____

Michael A. Hummert
Lead Attorney
State Bar No. 10272000
Ignacio Barbero
State Bar No. 00796162
EKVALL & BYRNE, LLP
4450 Sigma Road, Suite 100
Dallas, Texas 75244
TELEPHONE (972) 239-0839
FACSIMILE (972) 960-9517
mhummert@ekvallbyrne.com
ibarbero@ekvallbyrne.com

ATTORNEYS FOR DEFENDANT
RACETRAC PETROLEUM, INC.

## **CERTIFICATE OF SERVICE**

On February 9, 2023, I electronically submitted the foregoing document with the clerk of court of the U.S. District Court, Northern District of Texas, using the electronic case files system of the court. I hereby certify that I have served all counsel and/or pro se parties of record electronically or by another manner authorized by Federal Rule of Civil Procedure 5(b)(2).

_____

MICHAEL A. HUMMERT

# EXHIBIT A

```
*** INBOUND NOTIFICATION : FAX RECEIVED OK ERRORS ***
TIME RECEIVED                     REMOTE CSID       DURATION    PAGES   STATUS
January 6, 2023 at 5:01:25 PM EST                   5567        52      Failed to receive

ERROR CODE ( 700 )
Error in fax transmission.
```

| From: Richard Lopez | Fax: 18886014934 | To: 8595502745@rcfax.com | Fax: (859) 550-2745 | Page: 1 of 149 | 01/06/2023 2:28 PM |

# FACSIMILE TRANSMISSION

**To:** 8595502745@rcfax.com

**From:** Richard Lopez

R. E. LOPEZ & MORALES

550 E.15th Street

Plano

TX            75074

**Phone:**

**Fax Phone:** (859) 550-2745

**Phone:**

**Fax Phone:** 18886014934

**Note:**

Claim Number:          189527317-001
Heather D. Jamieson
Litigation Paralegal to Magdalena Avila and Benjamin Nguyen
[Logo]<https://www.my-company.com/>
Principal Office:
550 East 15th Street | Suite 200 | Plano, Texas 75074
Fort Worth Office:
400 East Weatherford Street | Ste 204 | Fort Worth, TX 76102
Office: 469-209-7727 | Fax: 888-601-4934
*Please direct correspondence to principal office
** Service will only be accepted at
service@northtxlaw.com<mailto:service@northtxlaw.com> **
IMPORTANT/CONFIDENTIAL: This message from the law firm of R. E.
López & Morales is intended only for the use of the addressees
shown above. It contains information that may be privileged,
confidential and/or exempt from disclosure under applicable law.
If you are not the intended recipient of this message, you are
hereby notified that the copying, use or distribution of any
information or materials transmitted in or with this message is
strictly prohibited. If you received this message by mistake,

**Date:** 01/06/2023

**Pages:** 149



R. Eric López
Daniel Morales, LLM*

Kory Kingery
Benjamin Nguyen
Magdalena Avila

# R.E. LÓPEZ & MORALES

## ATTORNEYS AT LAW

* Board Certified in Personal Injury Trial Law
by the Texas Board of Legal Specialization

January 6, 2023

**_Via Facsimile: (859) 550-2745_**
Broadspire Insurance
**Atten: Aaron Yelko**
P.O. Box 14345
Lexington, KY 40512-4345

| | | |
|---|---|---|
| **Re:** | **Our Client:** | **Jason Wittenauer** |
| | **Your Insured:** | **Racetrac Petroleum** |
| | **Date of Accident:** | **May 18, 2021** |
| | **Claim Number:** | **189527317-001** |

Dear Mr. Prevost:

As you know, this firm represents the above-referenced client regarding injuries sustained on the above-referenced date. As a result of said injuries, our client has incurred the following medical special damages, as follows:

## MEDICAL

| | |
|---|---|
| Texas Health Azle | $ 1,803.25 |
| Texas Health Fort Worth | $47,635.37 |
| Texas Medicine Resources | $ 5,493.00 |
| Radiology Associates of North Texas | $ 329.00 |
| Texas Health Physicians Group | $ 3,168.00 |
| Walter Gracia, M.D. | $ 890.00 |
| Ameripath | $ 637.00 |
| US Anesthesia Partners | $ 2,349.00 |
| Pharmacy receipts | $ 55.12 |

**_Total Medical:_** **_$62,359.74_**
*All documentation supporting damages is attached for your review.*

## LIABILITY

As you can see from the facts of the case, the liability of your insured is certain. In particular my client was walking into the men's bathroom when he tripped on an open floor drain, causing injuries to my client.

## MECHANISM FOR INJURY

As you know, this was a significant injury. Additionally, my client was unprepared for the incident, a fact that contributes to the injuries sustained.

DCN -202301065004368 BroadSpire Receive date -1/6/2023 5:00:00 AM ACS process date -1/9/2023 5:00:00 AM

After the accident, my client sought immediate treatment at Texas Health Azle. This clearly shows the pain and discomfort that my client was suffering. Considering the impact of the fall and treatment, it is clear that my client suffered injuries as a result of this accident.

## DIAGNOSIS

**Texas Health Azle** *(Dr. Justin Fairless, D.O.)*
S63.615A→Unspecified sprain of left ring finger, initial encounter

**Texas Health Fort Worth** *(Dr. Gerald Chase, M.D.)*
I7300→Raynaud's syndrome without gangrene;
M79.642→Pain in left hand;
M62.242→Nontraumatic ischemic infarction of muscle, left hand;
E871→Hypo-osmolality and hyponatremia;
L03012→Cellulitis of left finger;
I10→Essential (primary) hypertension;
D72.829→Elevated white blood cell count, unspecified;
I96→Gangrene, not elsewhere classified;
L98498→Non-pressure chronic ulcer of skin of other sites with other specified severity;
S67195A→Crushing injury of left ring finger, initial encounter;
M79.645→Pain in left finger(s)

## GENERAL DAMAGES CLAIM

Our client endured a significant injury, with a resulting clear mechanism for injuries due to this accident. He sought treatment immediately after the accident. Additionally, the treatment regimen was quite conservative, in that my client treated for five months. Considering the severity of the fall his treatment was well within the Mercy Guidelines for this type of incident. In that regard, we believe that **$1,000,000.00 for Jason Wittenauer** in general damages would not be unreasonable for a juror to consider in this incident.

## COMPREHENSIVE DEMAND

Our investigation indicates that the liability of your insured is certain. In consideration of the above analysis and the damages incurred including: present and future medical expenses; lost wages; pain and suffering; and mental anguish; our office hereby demands of your insured the sum of **$1,062,359.74 or Policy Limits whichever is less** ($62,359.74 in medical specials, and $1,000,000.00 in general damages) for **Jason Wittenauer** in exchange for a complete and unconditional release of your insured.

You have (14) fourteen days upon receipt of this demand to either accept our offer, or respond with a good faith counter-offer. Please respond to this demand by **August 3, 2022.** You should be aware that an insurer becomes the agent of the insured once a claim is made upon the insured, and thus the insurer is held to that degree of care and diligence that an ordinary prudent person would exercise in the management of their own business. Texas law has established that if an insurer refuses an offer of settlement when it appears that an ordinary prudent person would have settled, the insurer may be liable for damages. *G.A. Stowers Furniture Co. v. American Indemnity Co.*, 15 S.W.2d 544 (Tex Comm'n 1929, holding approved). The *Stower's* case places liabilities on you for the full amount of any judgment in our client's favor, even in excess of your policy limits, should you wrongfully refuse to settle within policy limits prior to such judgment.

The injuries and actual damages sustained by our client, and the circumstances surrounding this claim, could form the basis for a jury verdict far in excess of the amount that we now offer to compromise our claim. If our demand exceeds the amount of your insurance coverage, our offer to settle for policy limits is conditioned upon you providing our office with a certificate of the actual amount of coverage afforded by your contract of insurance.

Again, our offer to settle has been submitted in good faith and we trust you will carefully examine our demand, evaluate it honestly, and respond in the same good faith in which we submit this demand. We thank you in advance for your prompt attention and consideration in this matter.

Thank you in advance for your cooperation and attention to this matter and do not hesitate to contact me if you have any questions or comments.

Very truly yours,
R. LÓPEZ & Morales

Magdalena Avila
Attorney at Law

Enclosures- medical bills and records